**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEVON RECALD JAMES,

       Petitioner,

v.

MILLICENT WARREN,

       Respondent.

CASE NO. 2:07-14315
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

<u>**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS**</u>
<u>**CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL**</u>
<u>**IN FORMA PAUPERIS**</u>

       Devon Recald James, ("petitioner"), presently confined at the Thumb Correctional

Facility in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  In his *pro se* application, petitioner challenges his conviction for armed robbery,

M.C.L.A. 750.529; second-degree fleeing and eluding, M.C.L.A. 750.257a(4)(b); and possession

of a firearm in the commission of a felony, M.C.L.A. 750.227b.  For the reasons stated below,

the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE**.**

**I.  BACKGROUND**

       Petitioner was convicted of the above offenses following a jury trial in the Macomb

County Circuit Court. [1]

       Lana Sembarski was working at a Farmer Jack grocery store on January 31, 2003.  At

about 3:00 p.m., Sembarski was working near the cash office, when she was approached by a

---

[1]  Due to the brevity of the facts recited by the parties in their pleadings, the Court is willing to include
facts from petitioner's state court appellate brief when discussing the facts of the case.[See Dkt. # 6-5]. *See Burns v.
Lafler,* 328 F. Supp. 2d 711, 714, n. 1 (E.D. Mich. 2004(internal citation omitted).

man who asked whether she was the manager.  The man then lifted up his shirt and displayed the

top portion of a handgun that was tucked into his pants.  Sembarski described her assailant as

being a black male, who was carrying a canvas bag and a yellow legal pad.  The man ordered

Sembarski into the cash office.

Faith Watson was working inside of the cash office, when Sembarski and the man

entered.  Watson identified petitioner at trial as this man.  Petitioner has a legal pad and a

handgun.  Watson testified that petitioner wore a beige sweater with checkered boards, a wig,

brown pants, and a cap.  Petitioner demanded money from Watson and took five or six hundred

dollars from the cash drawer and safe, before placing them into the canvas bag that he was

carrying.

Watson subsequently identified petitioner at an in-person lineup and claimed to be "very

sure" of her identification of petitioner at the corporeal line-up, as well "very, very, sure" of her

in-court identification of petitioner at trial.  Watson admitted on cross-examination that she had

attended petitioner's preliminary examination prior to the live line-up, in which she observed

petitioner being brought into the courtroom with other prisoners.  Watson, however, positively

identified the sunglasses, sweater, and cap seized by the police at the time of petitioner's arrest

as those that had been worn by her assailant.

Charles Stevenson was working in the food aisle at Farmer Jack's at the time of the

robbery.  Stevenson heard a young man yell that the store was being robbed.  Stevenson looked

inside of the cash office and observed a black male writing on a yellow legal pad.  The man left

the store with the yellow legal pad and a money bag.  Stevenson hurried outside and witnessed

the man get into an "old style Ford Bronco" and leave the store parking lot in a hurry.  Stevenson

obtained the license plate number of the Bronco, "9DPW47".  Stevenson testified that no one

else was in the truck.  As the truck took off, two Eastpointe Police Department vehicles pulled

up next to Stevenson.  Stevenson informed the police that the Bronco was the vehicle involved in

the armed robbery.

Several police vehicles immediately began pursuing the Ford Bronco.  According to three

different police officers who were in pursuit of the vehicle, there was only one occupant of the

Ford Bronco.  None of the officers ever observed a second occupant exit the vehicle during the

police chase.  The police chased the vehicle at high speeds into Detroit, where it finally came to

a stop after striking two vehicles on Seven Mile Road.  A number of the officers testified that the

sole occupant of the Ford Bronco, a black male, exited the vehicle and began running.

After searching the area for several minutes, police discovered petitioner hiding in the

bushes wearing a tan cap and a sweater.  Officer Lulko identified petitioner as being the driver of

the Ford Bronco.  Petitioner did not initially comply with the officers' orders to get on the

ground.  Petitioner was eventually arrested.

Police recovered several items from the scene of the crashed Ford Bronco.  Sunglasses

were recovered from outside the Ford Bronco.  A yellow legal pad was recovered from the

Bronco's passenger floorboard.  The legal pad contained two of petitioner's fingerprints.  A

handgun was discovered outside of the passenger door.  Some $ 2,402 in currency was recovered

from the ground by the Bronco and from a duffel bag that had been discarded outside the

Bronco.  Police recovered from inside the Bronco a sales receipt from "Lens Crafters" and a bill

for Comcast, both in petitioner's name.

Petitioner's conviction was affirmed on appeal.  *People v. James,* No. 251719

3

(Mich.Ct.App. March 3, 2005); *lv. den.* 474 Mich. 901, 705 N.W.2d 123 (2005).  Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. James,* No. 2003-0538-FC (Macomb County Circuit Court, April 7, 2006).  The Michigan appellate courts denied petitioner leave to appeal. *People v. James*, No. 272109 (Mich.Ct.App. February 14, 2007); *lv. den.* 478 Mich. 930, 732 N.W.2d 916 (2007).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether the denial of Petitioner's motion to suppress his lineup identification violated his state and federal due process rights to a fair trial.  Faith Watson's line-up and in-court identification of Petitioner was tainted because she observed Petitioner at his preliminary examination.

II. Whether Petitioner['s] United States Constitutional Sixth Amendment right to effective assistance of counsel was violated due to counsel's failure to request the court to have the courtroom clear of any witnesses whom did not have a chance to view the Petitioner in a lineup prior to the Petitioner entering the courtroom to formally waive the preliminary examination before the court.

III. Whether Petitioner was denied his Sixth Amendment right to effective assistance of counsel due to counsel's failure to investigate.

IV. Whether Petitioner was denied his Sixth Amendment right to effective assistance of counsel due to counsel's failure to move for the exclusion of the Petitioner's prior bad acts because there (sic) prejudicial effect outweighed its probative value.

V. Whether Petitioner was denied his United States Constitutional Sixth Amendment right to effective assistance of counsel due to counsel['s] failure to move for the appointment of an independent fingerprint expert to investigate the scientific aspect of the State case.

VI. Whether Petitioner was denied his United States Fifth Amendment right to due process, and his Sixth Amendment right to effective assistance of counsel due to the cumulative effect of the errors that were committed.

VII. Whether Petitioner has met the requirement for entitlement to relief under MCR 6.508(D), and cause and prejudice has been shown due to ineffective assistance of appellate counsel.

4

VIII. Whether Petitioner's conviction for fleeing and eluding 2nd degree must be vacated. The jury was not instructed on that offense. Retrial on the charge or remand for resentencing on the charge presented to the jury is required.

## II.     STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III.  ANALYSIS

### A.  Claim # 1.  The suggestive line-up claim.

Petitioner first claims that the trial court erred in refusing to suppress the results of a lineup conducted at his request for witness Faith Watson.  Petitioner contends that Watson's identification of petitioner as the perpetrator was tainted because she observed petitioner at his preliminary exam prior to the line-up.

The Michigan Court of Appeals rejected the claim, because petitioner invited the error when he knowingly requested a lineup for Watson even though he knew that she may have previously observed him in court at the preliminary examination. *James,* Slip. Op. at * 1-2.

A defendant in a criminal case cannot complain of error which he himself has invited. *Shields v. United States*, 273 U.S. 583, 586 (1927).  When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley,* 275 F. 3d 478, 486 (6th Cir. 2001).  Because petitioner invited the error by requesting the corporeal line-up in this case, he is not entitled to habeas relief on his first claim.

**B.  Claims # 2,3,4,5,6,and 7.  The ineffective assistance of counsel claims.**

The Court will consolidate petitioner's ineffective assistance of counsel claims for judicial economy.

Respondent asserts that petitioner's ineffective assistance of counsel claims are procedurally defaulted because petitioner failed to raise the claims on direct review of his convictions, and when he raised it on state collateral review, the state appellate courts rejected the claim pursuant to Michigan Court Rule 6.508(D).  Respondent correctly notes that, in *Burroughs v. Makowski*, 282 F. 3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit found the Michigan Supreme Court's reliance on Rule 6.508(D) was sufficient for a federal habeas court to conclude that the decision rested on an adequate and independent state procedural bar.

6

More recently, however, the Sixth Circuit held that a claim is not procedurally defaulted where the Michigan Supreme Court relies upon Rule 6.508(D) without a clear and express invocation of a procedural bar and where the only state court to provide a reasoned opinion adjudicated the petitioner's claim on the merits. *See Abela v. Martin*, 380 F. 3d 915, 921-24 (6th Cir. 2004). Although the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's claims on the basis of Michigan Court Rule 6.508(D), the trial court judge determined that what now constitute the basis of petitioner's second and third claims had already been decided against petitioner on his direct appeal and therefore could not be reconsidered on post-conviction review. The trial court judge rejected petitioner's remaining claims on the merits. The trial court made no mention of Rule 6.508(D)(3) when denying petitioner's motion for relief from judgment. Additionally, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004). This Court therefore concludes that petitioner's claims are not procedurally defaulted.

    1.  *The Standard of Review*

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The

7

*Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

 2.  *The individual claims.*

 A.  Claims # 2 and # 3.  The failure to sequester witnesses prior to the preliminary examination.

 In his second and third claims, petitioner contends that his first attorney was ineffective for failing to move for the district court to sequester the witnesses prior to petitioner being brought into the courtroom to waive his preliminary examination.  As a result, Faith Watson was present in the courtroom when petitioner was brought into court to waive his preliminary examination.  Petitioner claims that Watson's subsequent line-up and in-court identifications were tainted because she was able to view petitioner in court at the time that he waived his preliminary examination.

 Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,

5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

The mere fact that petitioner may have been identified by Watson at a preliminary examination does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive.  In *Baker v. Hocker*, 496 F. 2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber.  In rejecting the claim, the Ninth Circuit admitted that any in-court identification confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617.  However, the Court ruled that more than suggestion is required for a due process violation.  The procedure must create 'unnecessary' or 'impermissible' suggestion.  *Id.*

In *Howard v. Bouchard,* 405 F. 3d 459, 471-72 (6th Cir. 2005), the Sixth Circuit held

that a lineup identification, which was made only after a witness had seen the petitioner on two occasions brought into the courtroom and seated at the defense table during the preliminary examination, was not impermissibly suggestive, where nothing suggested that the witness saw more than the back of the petitioner's head on one occasion, or that he was positioned to get a good look during the second proceeding, or that the police officers said anything to suggest defendant's guilt, and both proceedings were quickly adjourned.

In the present case, Watson testified that she was present in the courtroom at the time of the preliminary examination when she witnessed petitioner being brought into court and placed with other prisoners in the prisoners' box. (Tr. 10/1/2003, pp. 176-77). There is no indication that Watson got a prolonged view of petitioner or that she ever observed him sitting with counsel at the defense table. Under the circumstances, petitioner has failed to show that it was unduly suggestive for Watson to witness him in the courtroom at the preliminary examination or that counsel was ineffective for failing to move for the witnesses to be sequestered.

Moreover, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Ms. Watson testified that the lighting was good in the cash office. Ms. Watson testified that she was only about ten feet away from petitioner during the robbery. Watson picked petitioner out at the lineup. Watson testified that she was "very sure" when she positively identified petitioner at the lineup and was "very, very sure" of her in-court identification. Watson observed the robbery for thirty seconds to about one minute. (*Id.* At pp. 162-68). These factors all support a finding that an independent basis existed for Watson's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F.

10

Supp. 2d 829, 847 (E.D. Mich. 2001).  Moreover, with respect to Watson's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard,* 405 F. 3d at 473; See also *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun).  In light of the fact that Watson was being robbed at gunpoint, it was not unreasonable to conclude that Watson paid a high degree of attention to her assailant.

Moreover, even if there were slight discrepancies between Watson's initial description of her assailant and petitioner's appearance, this would be insufficient to render the in-court identification suspect, in light of the fact that Watson was able to get a good look at petitioner and testified that she was certain in her identification of petitioner as being the suspect. *See United States v. Hill,* 967 F. 2d at 232-33.

Finally, the reliability of Watson's in-court identification is supported by the fact that he "testified without equivocation" that petitioner was the robber. *Howard,* 405 F. 3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848.

In the present case, the police pursued the Ford Bronco as the vehicle fled from the robbery scene.  All of the civilian and police witnesses testified that petitioner was the only occupant of the vehicle.  After the Ford Bronco crashed, petitioner was found by the police

11

hiding in the bushes nearby.  A yellow legal pad containing petitioner's fingerprints, a handgun, and a large amount of money were recovered from either inside or near the Ford Bronco.  Police recovered from inside the Bronco a sales receipt from "Lens Crafters" and a bill for Comcast, both in petitioner's name.  Watson positively identified the sunglasses, sweater, and cap seized by the police at the time of petitioner's arrest as those that had been worn by her assailant.  In light of this overwhelming evidence against petitioner, the admission of Watson's allegedly unreliable identification testimony was harmless error at best. *See Solomon v. Curtis,* 21 Fed. Appx. 360, 363 (6th Cir. 2001).

In light of the fact that Watson's in-court identification of petitioner was independently reliable, counsel's failure to object to any potential suggestive identification procedure at the preliminary examination did not prejudice petitioner, so as establish the ineffective assistance of counsel. *Howard,* 405 F. 3d at 482-85.

B. Claim # 4.  Counsel's failure to move for the exclusion of prior bad acts evidence.

Petitioner next claims that counsel was ineffective for failing to move for the exclusion of prior bad acts evidence.

Petitioner does not indicate what prior bad acts evidence was admitted into evidence against him.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Malcum v. Burt,* 276 F. Supp. 2d 664, 685 (E.D. Mich. 2003); *Reedus v. Stegall,* 197 F. Supp. 2d 767, 782 (E.D. Mich. 2001). Because petitioner has not provided any evidence to substantiate this ineffective assistance of counsel claim, this Court cannot evaluate whether the *Strickland* standard has been met. *See Starcher v. Wingard,* 16 Fed. Appx. 383, 387 (6th Cir. 2001).

Petitioner further claims that he was deprived of his right to testify after being given erroneous advice by counsel.  However, petitioner admits that he acknowledged on the record at trial that he chose to waive his right to testify after having been advised by his counsel not to take the witness stand.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  Because the record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Id.*

Moreover, petitioner's proposed testimony, which amounted to a "blanket denial" of his involvement in these crimes, would have had a minimal impact on the outcome of this case, in light of the overwhelming evidence of guilty against petitioner.  Petitioner has therefore failed to show that he was prejudiced by counsel's failure to permit him to testify, so as to support his ineffective assistance of counsel claim. *See Collins v. United States,* 67 Fed. Appx. 888, 890 (6th Cir. 2003).

C.  Claim # 5.  Failure to obtain a fingerprint expert.

Petitioner next claims that his counsel was ineffective for failing to obtain a fingerprint expert to challenge the state police lab technician's findings that petitioner's fingerprints were recovered from the yellow legal pad.

Petitioner only speculates that an independent fingerprint expert would have challenged the finding that petitioner's fingerprints were recovered from the yellow legal pad.  Moreover, as mentioned above, even in the absence of these fingerprints, the evidence against petitioner

13

was overwhelming.  Petitioner's mere speculation that the results of his trial might have been different had his counsel obtained an expert in fingerprint analysis is insufficient to establish prejudice, so as to support petitioner's ineffective assistance of counsel claim. *See Ruiz v. U.S.,* 447 F. Supp. 2d 921, 929 (N.D. Ill. 2006).  Thus, trial counsel was not ineffective for failing to investigate the prosecution's fingerprint evidence or to consult an fingerprint expert in this case, in the absence of any showing that counsel would have discovered exculpatory evidence which would have lead to a different result in petitioner's trial. *See United States v. Aquino,* 54 Fed. Appx. 505, 506-07 (2nd Cir. 2002); *See also Gaither v. Birkett*, 2006 WL 1547636, *3 (E.D. Mich. May 31, 2006).

D. Claim # 6.  The cumulative ineffective assistance of counsel claim.

Petitioner next claims that the cumulative nature of the errors deprived him of the effective assistance of trial counsel.  Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless or were of slight importance, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000).

E. Claim # 7.  The ineffective assistance of appellate counsel claim.

Petitioner lastly claims that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on his direct appeal.

Because petitioner has failed to show that his trial counsel was ineffective, petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 883 (E.D. Mich. 2002).

**C.  Claim # 8.  The jury instruction claim.**

Petitioner lastly contends that the trial court's jury instruction on the offense of second-degree fleeing and eluding was incomplete, because it omitted the aggravating element, namely, the fact that petitioner had a prior conviction for fleeing and eluding, from the instruction.  The Michigan Court of Appeals rejected petitioner's claim, on the ground that petitioner's counsel had waived the issue by expressing satisfaction with the instruction as given. *James,* Slip. Op. at * 2.

Where a defendant's attorney expresses satisfaction with the trial court's handling of the matter, as was the case here, the claim of error regarding the issue is waived for appellate review. *See People v. Carter,* 462 Mich. 206, 219; 612 N.W. 2d 144 (2000).  Because the Michigan Court of Appeals relied on counsel's expression of approval of the jury instructions as given to reject petitioner's claim, the issue is procedurally defaulted. *See McKissic v. Birkett,* 200 Fed. Appx. 463, 471 (6th Cir. 2006).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Petitioner claims that counsel was ineffective for waiving the aggravated element from the  jury instruction.

It is unclear whether petitioner fairly presented this claim to the Michigan Court of Appeals, because appellate counsel did not include petitioner's ineffective assistance of counsel

15

claim in his statement of questions in his brief on appeal.  M.C.R. 7.212(C)(5) requires a statement of the questions involved, with each issue for appeal separately numbered. *See Dando v. Yukins,* 461 F. 3d 791, 797 (6th Cir. 2006).  However, because petitioner's ineffective assistance of counsel claim could be "effectively inseparable" from his jury instruction claim, "it is far from clear" that petitioner would have had to separately number it in his brief to meet the requirements of M.C.R. 7.215(C)(5), so as to exhaust his ineffective assistance of counsel claim in order to use it to establish cause to excuse his default. *Id.*

Nonetheless, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claim would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *Terry v. Bock,* 208 F. Supp. 2d 780, 793 (E.D. Mich. 2002).  An erroneous jury instruction that omits an element of the offense is subject to a harmless-error analysis on habeas review. *California v. Roy,* 519 U.S. 2, 4 (1996).  As the Michigan Court of Appeals indicated, given the ease with which the prosecutor could have proven petitioner's previous conviction for fleeing and eluding, *See James,* Slip. Op. at * 2, the omission of the aggravating element of petitioner's prior fleeing and eluding conviction from the instruction on second-degree fleeing and eluding was harmless error at best.  Petitioner is not entitled to habeas relief on his eighth claim.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885.   The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.      CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2009

17

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 27, 2009.

S/Denise Goodine
Case Manager